IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES EAKLE, | : |
| | : |
| Plaintiff | : CIVIL NO. 4:CV-0-0007 |
| | : |
| v. | : (Judge Jones) |
| | : |
| JOHN A. PALAKOVICH, et al., | : |
| | : |
| Defendants | : |

## **ORDER**

### **March 21, 2006**

Charles Eakle, an inmate formerly confined in the Smithfield State Correctional Institution ("SCI-Smithfield"), in Huntingdon, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1]  Plaintiff alleges that Defendants violated his right to exercise his religious beliefs because they refused to grant him a hair length exemption to the Department of Corrections' Grooming Policy.  Named as Defendants are the following SCI-Smithfield employees: Superintendent John A. Palakovich; Chaplains David Bowen and Robert Shehan; Hearing Examiner Robert Norris; Corrections Officer Grove; and Lisa Hollibaugh, Assistant to the Superintendent and Grievance Coordinator.

---

1. Plaintiff is currently confined in the State Correctional Institution, in Graterford, Pennsylvania.

Presently pending before the Court are the parties' Motions for Summary Judgment. (Rec. Docs. 15, 37). Defendants argue, inter alia, that Eakle has failed to exhaust available administrative remedies. Because Defendants' argument that Plaintiff has failed to exhaust administrative remedies is case dispositive, Defendants' other arguments will not be addressed. For the reasons set forth below, Defendants' Motion for Summary Judgment will be granted.

## I.   **Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248;

2

Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e)[2] to go beyond the pleadings with affidavits, depositions, answers

---

2. Eakle was provided with copies of M.D. Pa. Local Rules 7.1 through 7.8, Local Rule 26.10, and Federal Rule of Civil Procedure 56(e). In relevant part, Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

3

to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## II. **Statement of Facts**

Eakle was incarcerated in SCI-Smithfield from June 15, 2004 to November 8,

---

appropriate, shall be entered against the adverse party.

Local Rule 7.4 provides in relevant part:

> All material facts set forth in the statement required
> to be served by the moving party will be deemed to be
> admitted unless controverted by the statement required
> to be served by the opposing party.

See Rec. Doc. 3, Standing Practice Order.

2005. (Rec. Doc. 38, Ex. 1, Declaration of John A. Palakovich at ¶ 17). On July 17, 2004, pursuant to DC-ADM 819, Eakle submitted a request for a religious exemption from the haircut provision of the DOC's Grooming Policy. (Rec. Doc. 38, Ex. E, Inmate Religious Accommodation Request).

Section VI(G) of DC-ADM 819 sets forth the procedures that an inmate must follow in order to obtain an exemption to the grooming policy for legitimate religious purposes, and provides as follows:

> A request for a religious accommodation that is not covered elsewhere in Department policy shall be made as follows:
>
> a. Each inmate must use a DC-52, Inmate Religious Accommodation Request Form to submit his/her request for accommodation to the FCPD.
>
> b. In cases of an inmate request for an exemption from Department policy DCADM 807,[3] "Inmate Grooming and Barber/Cosmetology," the inmate must submit a DC-52 within 15 working days of receiving the order to cut his hair. If no DC-52 is submitted within 15 working days of the initial order to cut his hair or no religious accommodation is claimed, the inmate shall be subject to discipline in accordance with Department policy DC-ADM 801, "Inmate Discipline."

---

3. DC-ADM 807, the Inmate Hygiene and Grooming Policy, governs the length of an inmates hair while incarcerated. (Rec. Doc. 38, Ex. A, DC-ADM 807). The policy operates to provide a safe, clean, and healthy environment for inmates and staff. Id. Pursuant to the policy, male hairstyles include hair lengths that do not fall below the top of the collar in length (Afro styles no longer than 4 inches are permitted.). Id. A beard or goatee may be no longer than 3 inches, a mustache and sideburns shall be permitted, provided they are kept neat and clean. Id.

      c. The inmate shall obtain written information from his/her outside faith group, including any publications that describe the goals, beliefs, and practices of the group and supply this information to the FCPD for review.

      d. The Religious Accommodation Review Committee shall review each inmate's request for a religious accommodation within 45 days of receipt and forward a recommendation to the affected Regional Deputy Secretary.

      e. The Regional Deputy Secretary shall, within 15 days of receiving the recommendation from the Director of the Bureau of Inmate Services/designee, approve/disapprove the request and notify the Director of the Bureau of Inmate Services of the decision.

      f. The Director, Bureau of Inmate Services shall, within 10 days, inform the Facility Manager and the FCPD of the requesting facility of the determination and ensure copies of all final determinations are provided to all Deputy Secretaries and Facility Managers. The FCPD shall be responsible for informing the affected inmate of the outcome of his/her request no later than 10 working days from the date that the determination of approval/disapproval is received.

      g. If an inmate is informed by the FCPD that the request will not be accommodated, the inmate may then file a grievance in accordance with Department policy DC-ADM 804, "Inmate Grievances." Grievances may only be submitted after the inmate has received notification of the decision on the requested accommodation.

      h. If an inmate is found not to comply with the accommodation or the reasons for the accommodation, the accommodation may be revoked. If appropriate, the violation shall be handled in accordance with Department policy DC-ADM 801, "Inmate Discipline."

Rec. Doc. 38, Ex. B, DC-ADM 819, Religious Activities Policy.

In August 2004, Superintendent Palakovich reviewed the evaluation submitted by Chaplain Bowen and SCI-Smithfield staff, concerning Eakle's request. Id. He concurred in their recommendation to disapprove Eakle's request for a hair length exemption to the Grooming Policy based upon security and sincerity concerns. Id.

On September 30, 2004, the DOC Bureau of Inmate Services concurred in the denial of Eakle's hair length exemption request and on October 6, 2004, Chaplain Bowen informed Eakle that his request for an exemption from the haircut provisions of the Grooming Policy had been denied by the DOC Central Office. Id. Chaplain Bowen further informed Eakle that he was required to follow the provisions of the Grooming Policy and failure to do so would result in disciplinary action. Id.

On October 7, 2004, Eakle was issued Misconduct No. 327880 for "Refusing to Obey an Order" to cut his hair. (Rec. Doc. 38, Ex. F., Misconduct No. 327880). On October 12, 2004, a hearing was held regarding Misconduct No. 327880. (Rec. Doc. 38, Ex. F., Disciplinary Hearing Report). At the hearing, Eakle indicated that he was willing to get a haircut and the hearing was suspended until October 15, 2004. Id. When the hearing resumed on October 15, 2004, Eakle attended the hearing with his hair cut and claimed that the order to cut his hair was a misunderstanding. Id. Eakle was found guilty of the charges. Id. He did not file an appeal from the hearing examiner's decision. (Rec.

7

Doc. 38, Ex. 1, Palakovich Declaration at ¶ 22).

On October 17, 2004, Eakle submitted Grievance No. 99039-04, concerning the denial of his religious accommodation request. (Rec. Doc. 38, Ex. G, copy of grievance). On October 21, 2004, Chaplain Bowen responded to Grievance No. 99039-04 with the following:

> Your request for a haircut exemption was denied by Central Office. You are listed in your DC-15 records as "Protestant". When I spoke with you, you told me you were a "born again Christian." You also told me you are a Rastafarian. You told me you have taken the "Nazaite"(sic) vow as had Jesus. I asked if you knew the difference between Nazarite and Nazarene. You didn't know the difference.
>
> You seem to be sincere in your desire for a haircut exemption but you do not evidence sincerity in your knowledge or practice of the Rastafarian religion. The Protestant or Christian faith does not require that you not cut your hair.
>
> When I asked you if there is anything else involved in the Nazarite vow other than not cutting your hair according to the Bible, you told me no. You claim to be basing your request on the Bible, but you don't even know what the Bible says about the vow.
>
> All of the above demonstrates confusion rather than sincerity regarding your religious faith and practice on which you base your request for a haircut exemption.

Rec. Doc. 38, Ex. G, Official Inmate Grievance Initial Review Response. Eakle appealed Chaplain Bowen's decision to Superintendent Palakovich. (Rec. Doc. 38, Ex. 1,

8

Palakovich Declaration at ¶ 25). On October 28, 2004, Superintendent Palakovich denied Eakle's appeal. (Rec. Doc. 38, Ex. G, Grievance Appeal). Eakle then appealed Superintendent Palakovich's denial to the DOC Secretary's Office of Inmate Grievance and Appeals.

By letter dated November 16, 2004, Eakle's appeal to the Secretary's Office was rejected, based upon the following:

> This is to acknowledge receipt of your letter to this office. Upon review of your letter, it is the decision of this office to file your letter without action. You have failed to comply with the provision(s) of the revised DC-ADM 804 effective May 1, 2002.
>
> In accordance with the provisions of DC-ADM 804, VI D, 1h, a proper appeal to final review must include photocopies of the Initial Grievance, Initial Review, the Appeal to the Facility Manager, and the Facility Manager's decision. The text of your appeal(s) to this office shall be legible, presented in a courteous manner, and the statement of facts shall not exceed two pages.
>
> Review of the record reveals that your appeal(s) is incomplete. You have failed to provide this office with the required documentation that relates to your appeal(s). You are not permitted to appeal to this office until you have complied with all procedures established in DC-ADM 804. You have ten working days from the date of this memo to provide this office with documents needed to conduct final review. Any further correspondence from you regarding your appeal(s), which does not contain the required documents, will result in the dismissal of your appeal(s).

Rec. Doc. 38, Ex. G, November 16, 2004 letter.

On December 29, 2004, the Secretary's Office of Inmate Grievance Appeals informed Eakle that his appeal was dismissed for failure to comply with DC-ADM 804, specifically, that Eakle's appeal packet, received on December 9, 2004, failed to include [his] initial grievance and appeal to the Superintendent." (Rec. Doc. 38, Ex. G, December 29, 2004 letter).

On January 3, 2005, Plaintiff filed the instant action in which he seeks compensatory and punitive damages, as well as injunctive relief. (Rec. Doc. 1, complaint).

## III. Discussion

Defendants contend that Eakle's failure to exhaust available administrative remedies entitles them to an entry of summary judgment in their favor. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion requires completion of the entire administrative process. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843-44 (E.D. Pa. 2000). If a prisoner fails to follow the

required administrative procedures, including meeting deadlines, the inmate's action cannot be maintained. See Buckner v. Bussanich, No. 1:CV-00-1594, slip op. at 6 (M.D. Pa. April 3, 2001) (Caldwell, J.)("an administrative remedy is not made unavailable simply because a prisoner failed to timely exercise his rights under the procedure. Otherwise, the prisoner could avoid the exhaustion requirement simply by refusing to pursue administrative remedies").

The Pennsylvania DOC has established procedures for the filing of complaints. First, the Pennsylvania DOC Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: the initial grievance submitted to the Facility Grievance Coordinator, an intermediate level of appeal to the Facility Manager, and a final level of appeal to the Secretary's Office of Inmate Grievances and Appeals. (See Rec. Doc. 38, Ex. 2-A, Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI). See also Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir.2000) (outlining the grievance review process).

The grievance procedure requires a prisoner to submit a grievance for initial review within fifteen working days after the event upon which the grievance is based. (Rec. Doc. 38, Ex. 2-A, DC-ADM 804 § VI, Part A(1)(h)). The inmate should state the facts

11

upon which he is entitled to relief. (See Rec. Doc. 20, Ex. 2-A, DC-ADM 804 § VI, Part A(1)(g)("The inmate shall include a statement of facts relevant to the claim. . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally.")). Indeed, in Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004), the Third Circuit recognized the significance in identifying the relevant facts and persons in order to bring a subsequent federal lawsuit:

> On this matter, the text is mandatory, or nearly so. . . To the extent that Brown's identity is a "fact [] relevant to the claim." – and it is– it was mandatory for Spruill to include it. To the extent that Brown was a "person [] who may have information" or someone with whom Spruill made "attempts to resolve the matter informally" – and he was – Spruill was required to identify Brown if practicable.

Spruill, 372 F.3d at 234. Moreover, the exhaustion requirement of § 1997e(a) is not satisfied simply "whenever there is no further process available to the inmate within the grievance system (which would happen if, say, an inmate fails to file an administrative appeal) . . ." Spruill, 372 F.3d at 227-28. Rather, § 1997e(a) requires that an inmate "avail[ ] himself of every process at every turn (which would require all appeals to be timely pursued, etc.)." Id.

In applying the above analysis to the factual background surrounding this action,

12

it is readily apparent to the Court that Plaintiff has procedurally defaulted on his claims and summary judgment will be granted in favor of Defendants. Plaintiff's appeal to the Secretary's Office of Inmate Grievance and Appeals was rejected because it failed to comply with DC-ADM 804, VI., D., 1h; specifically, it did not include copies of plaintiff's initial grievance and his appeal to the Superintendent. (Rec. Doc. 38, Ex. G). The record discloses that Eakle failed to resubmit the required documentation relative to his appeal. Id. Thus, Eakle has sustained a procedural default under the applicable DOC regulations.

Spruill, a Third Circuit Court of Appeals decision, cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Eakle offers no justification for his failure to resubmit the appropriate documentation in accordance with the appropriate Department of Corrections Directive. Thus, Eakle is now foreclosed from litigating this claim in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return

control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In <u>Pusey v. Belanger</u>, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied <u>Spruill</u> to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In <u>Berry v. Kerik</u>, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. <u>In Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in <u>Pozo</u>, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." Such precedents support dismissal of this action for Eakle's failure to pursue his administrative remedies with respect to his claims. Accordingly, Defendants' Motion for Summary Judgment will be granted.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.  Defendants' Motion for Summary Judgment (doc. 37) is

**GRANTED**.  Judgment is hereby entered in favor of Defendants and against Plaintiff.

2. Plaintiff's Motion for Summary Judgment (doc. 15) is **DENIED**.

3. Plaintiff's Motion to Add Defendants (doc. 22) is **DISMISSED** as moot.

4. The Clerk of Court is directed to **CLOSE** this case.

5. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

s/ John E. Jones III
John E. Jones III
United States District Judge
